FILED

2016 Aug-31  AM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEFFERY LAVON DUNCAN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:14-cv-02338-JEO** |
| | } | |
| **CAROLYN COLVIN,** | } | |
| **Commissioner, Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Jeffery Lavon Duncan (hereinafter "Plaintiff" or "Duncan") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits.  (Doc. 1).[1]  This case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction of this court for the disposition of the matter.  (Doc. 16).  *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be remanded.

---

[1]References herein to "Doc. ___" are to the electronic numbers at the top of each pleading that are assigned by the Clerk of the Court

## I.    PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits under Title II of the Social Security Act on October 1, 2013, alleging that he became disabled beginning September 1, 2008.  (R. 218).[2]  His application was initially denied on January 21, 2014.  (R. 156).  On August 19, 2014, following a hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability benefits, concluding that he is not disabled under the Social Security Act.  (R. 81). The Appeals Council declined to grant review of the ALJ's decision.  (R. 1). Plaintiff then filed this action for judicial review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  (Doc. 1, p. 1).

## II.    STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one.  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  Plaintiff must demonstrate that the decision of the Commissioner is not supported by substantial evidence.  *See, e.g., Allen v.*

---

[2]References herein to "R. ___" are to the administrative record located at Document 8 (Answer of the Commissioner).

*Schweiker*, 642 F.2d 799 (5th Cir. (Unit B) 1981).[3]  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r. of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).  The court gives deference to factual findings and reviews questions of law de novo.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1982)) (internal quotations and other citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  However, because questions of law are reviewed *de novo*, "[n]o … presumption of validity attaches to the [Commissioner's] conclusions of law."  *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   STATUTORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable

---

[3] Decisions by a Unit B panel of the former Fifth Circuit are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis.  20 C.F.R. § 404.1520(a).  Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[4] (citing 20 C.F.R. § 404.1520(a)(4)).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority.  11th Cir. R. 36-2.

Cir. 1986).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id*.; *Evans*, 551 F. App'x at 524.

## IV.   PLAINTIFF'S HISTORY

Duncan was admitted for treatment on November 8, 2005, to Brookwood Medical Center for psychiatric symptoms.  He was upset that he was being forced to retire from the Army.  He "threatened to shoot the people who made this decision."  (R. 303).  The admission notes state that "[h]e has spells where he has rage in which he just screams, hollers and gets uncontrollable.  He has talked of killing himself.  He does not talk to his wife much.  He does not sleep much.  He does not seem right." (*Id*.)  He admitted to having thoughts of wanting to hurt himself and others.  (*Id*.)  He was diagnosed with "[m]ajor depressive disorder [versus] adjustment disorder with mixed disturbance in emotion and conduct."  (R. 306).  Duncan was discharged on November 22, 2005, in stable condition.  (R. 305).

Duncan was determined to be disabled by the Veteran's Administration ("VA") with a 90 percent service-connected rating.  Seventy percent of his disability was determined to be premised on a major depressive disorder and

twenty percent was premised on degenerative arthritis of the spine.  (R. 70, 318).

According to his VA health summaries, it was "very unlikely" that Duncan "could

obtain and maintain any meaningful gainful employment requiring any significant

interaction with other people."  (R. 371).  The summaries further report that it

appears "[Duncan's] combination of service-connected disabilities make it

extremely unlikely that he will be able to obtain and maintain meaningful

employment unless or until he experiences a significant improvement in

functioning."  (R. 371-72).  Additional comments in the summary also note that

Duncan has "significant problems" with activities of daily living due to physical

pain, anhedonia,[5] and depression.  (R. 370).  His psycho-socio impairment was

rated at "moderately severe."  (R. 377).  His remote memory and recent memory

were moderately impaired.  (*Id.*)  The notes also reflect that Duncan has moderate

high frequency hearing loss in the right ear and moderate high frequency hearing

loss in the left ear.  (R. 374).

From March 2010 to November 2013, Duncan received much of his medical

treatment for various conditions, including back problems, depression, sleep apnea,

hearing loss, and hip and knee pain, from the VA in Birmingham, Alabama.  (R.

310-573).

---

[5] Anhedonia is "a psychological condition characterized by the inability to experience pleasure in
normally pleasurable acts."  (http://www.meriam-webster.com/disctionary/anhedonia (last
visited August 29, 2016)).

On March 20, 2010, Duncan was evaluated by Dr. Brian McFarland as part of a supplemental compensation and pension examination.  Duncan complained he was "chronically depressed, [and suffering from] anhedonia, low energy, poor concentration, poor sleep, irritability, ruminations, crying spells, nightmares, and anxiety."  (R. 71, 556).  Dr. McFarland found that Duncan's "disabilities made it extremely unlikely that he would be able to obtain and maintain any meaningful employment unless or until he experienced a significant improvement in functioning."  (R. 72).

Duncan was seen on May 14, 2010, for a compensation and pension examination for a spine disorder.  Dr. Isabel M. Baren noted that his "tenderness was not severe enough to cause an abnormal gait or spinal contour," the "spine was without painful range of motion," and "[p]ainful range of motion was produced in the thoraco-lumbar spine."  (R. 71).  Diagnostic imaging showed minor degenerative changes in the cervical and lumbosacral spinal regions.  (*Id*.)   Dr. Baren diagnosed Duncan with degenerative disc disease that "affected his ability to perform physical but not sedentary employment."  (R. 71, 534-35, 543).

Duncan was seen at the VA on July 13, 2012, June 26, 2013, and November 5, 2013, for complaints of pain in his hip and ankle.  (R. 71-72).  The examinations were unremarkable.

7

Duncan underwent a physical consultative examination with Dr. Jason Markle on December 10, 2013. He complained of pain in his lower back, hips, and knees. (R. 575). He further complained of numbness and tingling in his left leg along with a burning sensation in his anterior thigh. (R. 73). While noting that Duncan had pain on his left side during the straight leg raising tests and tenderness to palpation and paravertebral muscle spasms in the lumbral sacral spine and paravertebral muscles, Dr. Markle concluded that Duncan's physical examination revealed the "severity of complaint appears to be out of the scope of the pathology…." (R. 576). Dr. Markle diagnosed Duncan with "[l]umbar degenerative disc disease with questionable S1 radiculopathy." (R. 578). He also limited Duncan to siting to a maximum of less than two hours, stating "[for a]nybody with a herniated disc, sitting would be very difficult where it would increase his pressure on intradiscal pressure." (R. 579).

Dr. Randall Griffith, a clinical neuro-psychologist, conducted a consultative psychological evaluation of Duncan on December 17, 2013. He determined that Duncan suffered from a major depressive disorder of moderate severity, complicated by his chronic pain. (R. 583). Dr. Griffith found that Duncan's "ability to function independently appeared borderline to mildly limited." (R. 584). He also stated:

> Despite his impairments, Mr. Duncan appears able to understand and carry out reasonably detailed instructions, although his depression and pain would

likely result in some difficulties with concentration and memory. He has some guardedness but otherwise would not respond inappropriately to supervisors, coworkers, and the public. His ability to tolerate work stress appears moderately reduced.

(R. 582).

Duncan had an MRI on March 27, 2014, due to acute, intractable back pain secondary to L5-S1 left sided radiculopathy. (R. 755). It revealed two bulging discs. (*Id*.) He had a microdiscectomy and a left L-4, 5 hemilaminectomy on April 8, 2014. (R. 787-88).

On May 7, 2014, Dr. Samuel Saxon conducted a psychological consultation evaluation of Duncan. (R. 817). He determined that Duncan suffers from major depression with thought disturbance, ADHD, and mixed personality disorder with passive aggressive and schizo and paranoid traits. (R. 819). He also found that Duncan could not be expected to be reliable in attending work. (R. 821).

## V.   DISCUSSION

Duncan makes three arguments on appeal of the ALJ's decision. The first is that the ALJ improperly determined his RFC by ignoring the weight of the medical record. (Doc. 10 at 10-11). Next, Duncan argues that the ALJ failed to consider and assign proper weight to both the VA designation of disability and a report by Dr. Sam Saxon. (*Id*. at 11 & 17). Finally, Duncan argues that the ALJ improperly discredited his subjective pain testimony. (*Id*. at 11 & 21).

The Commissioner's retort to each argument is that: (1) the ALJ's determination of the RFC was supported by substantial evidence throughout the record (doc. 14 at 5); (2) "the determination of another governmental agency… is not binding on the Commissioner" (*id.* at 20); and (3) the subjective testimony was not supported by the objective medical record, doctor notes, and Duncan's daily living activities (*id.* at 7-9).

As will be discussed in detail below, because the court finds merit to certain of Duncan's arguments, the case must be remand for further consideration. For the sake of organizational clarity, the court will address Duncan's second issue first because it implicates other issues as well.

### A.     Dr. Sam Saxon's Report

At the urging of his counsel, Duncan underwent a psychological exam by Dr. Sam Saxon on May 7, 2014. (R. 817-24). Dr. Saxon's report is thorough, well-articulated, and detailed. His conclusions appear to be undergirded by specific medical testing. (*Id.*) Duncan asserts the ALJ erred in failing to consider this information. (Doc. 10 at 19-20). The Commissioner responds that "[t]he objective medical findings and other evidence from the relevant period, … , support the ALJ's assessment of Plaintiff's RFC and hypothetical question to the VE…." (Doc. 14 at 18-19 (citation omitted)). She also argues the "evidence

would not change the substantial evidence from the relevant period that supports the ALJ's Assessment…." (*Id.*)

The Eleventh Circuit Court of Appeals has "recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant" to the pertinent period. *See Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322-23 (11th Cir. 2015) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (considering a "treating physician's opinion" even though "he did not treat the claimant until after the relevant determination date"), *superseded on other grounds by statute*, 42 U.S.C. § 423(d)(5)); *see also Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) ("a claimant must prove his disability existed prior to the last month in which this '20 out of 40' test is met.  If a claimant becomes disabled [a]fter he has lost insured status, his claim must be denied despite his disability."); 20 C.F.R. § 404.1513.  However, a showing that an impairment became disabling after the expiration of the claimant's insured status is insufficient to establish eligibility for DIB. *See Hughes v. Comm'r of Soc. Sec*, 486 F. App'x 11, 13 (11th Cir. 2012) ("In order to qualify for DIB, an individual must prove that her disability existed prior to the end of her insured status period, and, after insured status is lost, a claim will be denied despite her disability.") (citing *Demadre*, 591 F.2d at 1090).

Duncan acknowledges that December 31, 2013, was the last date he was insured. (Doc. 10 at 2). Similarly, it is agreed that the date of Dr. Saxon's report was approximately four months after that date. The report provides that "[t]here is no reason to assume that [Duncan] could do anything very successfully at this point in time without active treatment of his [severe acquired Attention Deficit Hyperactivity Disorder]." (R. 819). Dr. Saxon also states that Duncan's test results show the following:

> He had extreme elevation on the depression scale and the schizophrenia scale in a way to suggest clearly that he has major depression with, most likely, thought disturbance. Secondarily, a diagnosis of Obsessive-Compulsive Disorder is very likely the case. He does also appear to be a very paranoid and passive aggressive individual, and I suspect a lot of the ideas that he has reflecting his hypersensitivity and suspiciousness could very well be delusional. At this point in time his superego functions seem to be rather reduced and he is clearly experiencing a weak ego strength, feeling very vulnerable and very likely to act out and possibly in a very unusual fashion. Therefore, effort to get him involved in a major way with a psychiatrist who is willing to follow him fairly closely for a while with anti-depressants, as well as benzothianzines may be able [to] help him. [T]o say the very least this gentleman should not be working anywhere anytime soon. Not only does he not have the mental stability to do it, he doesn't have the capacity to focus, attend, and concentrate either.

(R. 46, 819). In the comment section, Dr. Saxon states:

> This gentleman will be very difficult to treat, though he is in desperate need of it. In fact, one of the content scales called Negative Treatment Indicators is one of [the] highest Content Scales besides Depression and it really reflects the tendency on the part of these patients to have a variety of personality traits such as paranoia that causes them to resist significant treatment. The **chronicity** of this

> profile would suggest to this examiner also that his treatment should be ongoing, and even the resolution, this conflict between the VA disability statements and the social security ones, while obviously necessary and should be forthcoming, he will continue to have **significant problems that would dictate continued involvement from a psychological point of view.**

(R. 46-47, 819-20 (bold added)).  Finally, Dr. Saxon found that Duncan had no ability work an eight-hour day, forty-hour week, week after week due to his depression, distraction, and pain; Duncan had no ability to concentrate, persist in his endeavors, or pace himself; he had no ability to adapt to stressful circumstances at work; he had poor to no ability to understand, remember and carry out complex instructions; he had poor ability to carry out detailed, but not complex instructions; he had poor ability to carry out simple instructions; and he had no ability to behave in an emotionally stable way or relate predictability in social situations.  (R. 48-51, 824).

At the administrative hearing before the ALJ on June 24, 2014, the vocational expert indicated that if Dr. Saxon opined that Duncan could not work an eight-hour day, a forty-hour week, week-after-week, in view of his symptoms – depression, distraction and pain – that would preclude gainful employment.  (R. 137-40).

After closely examining the record, the undersigned is troubled by the fact that Dr. Saxon's opinion evidence, which was discussed at the administrative hearing, was not addressed by the ALJ.  The court recognizes that the evaluation

and opinion were rendered four months after the insured period expired and by a non-treating physician, but Dr. Saxon's use of the work "chronicity" along with the depth of the issues identified and assessed by the VA and various doctors concerning Duncan's mental health make the opinion relevant to the period at issue.  The report and opinions therein should have been addressed by the ALJ. The failure to address the report requires that this case be remanded for further examination.

The Commissioner argues that "[t]he objective medical findings and other evidence from the relevant period, … , support the ALJ's assessment" and the additional "evidence would not change the substantial evidence from the relevant period…" (Doc. 14 at 18-19).  This court is not so convinced.  The court believes that because Dr. Saxon's report is sufficiently detailed and substantive it is particularly relevant to the insured period and Duncan's persistent complaints, and should have been examined by the ALJ.  Whether the report impacts the prior determination is a matter best left for the ALJ under the circumstances.

**B.     The VA Disability Designation**

Duncan next argues that the ALJ failed to properly assign great weight to his VA Disability Rating.  (Doc. 10 at 17).  The Commissioner responds that Duncan has failed to meet his burden to show that he was disabled under the standards of the Social Security Act.  (Doc. 14 at 20).

As noted previously, Duncan has a 70 percent disability rating from the VA due to major depression and a 20 percent disability rating due to degenerative arthritis of the spine. (R. 318, 320, 325). The VA further determined Duncan was unemployable. (R. 370). After explaining that "a decision by … any other governmental agency about whether a claimant is disabled … is based on its rules and is not our decision," the ALJ stated in his decision that he "carefully considered the [VA] determination as well as the opinions of Drs. Baren and McFarland, but d[id] not regard them as dispositive." (R. 78).

Social Security regulations state that a "decision by …. any other governmental agency about whether you are disabled… is based on its rules and is not our decision about whether you are disabled." 20 C.F.R. § 404.1504. "A determination made by another agency that you are disabled … is not binding on [the Commissioner]." *Id.* Nevertheless, an ALJ is required to give great weight to a VA disability finding and, if it is rejected, the ALJ should provide adequate explanation as to why the disability finding was rejected. *See Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1979) (per curium) ("Although the ALJ mentioned the Veterans Administration disability rating on Rodriguez, he obviously refused to give it much weight. A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight. A VA rating of 100% disability should have been more closely scrutinized

by the ALJ") (internal citations omitted); *see also Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 915 (11th Cir. 2015) ("The ALJ's specific reasons for discounting the VA's determination show he considered and closely scrutinized that determination; consequently, the ALJ did not misapply the law in discounting it."); *Barraza v. Barnhart*, 61 F. App'x 917 (5th Cir. 2003) ("ALJs need not give great weight to a VA disability determination if they adequately explain the valid reasons for not doing so.").

The issue before the court at this juncture is whether the ALJ provided an adequate explanation for finding the VA disability determination – and, by proxy, the opinions of Drs. Baren and McFarland – not "dispositive." (R. 78). In his opinion, the ALJ provides three reasons for why he rejected the conclusions of the VA and its doctors: (1) "treating records from the Veterans' Administration fail to corroborate the alleged degree of severity prior to December 2013" (R. 77); (2) "the claimant maintained the ability to attend church and participate in 2 model railroad clubs by attending monthly meetings during the period of time at issue" (*id*.); and (3) the assessments of Drs. Markle and Griffith are both consistent with the record and inconsistent with the VA's conclusion that Duncan was disabled (*id.* at 78). Because the undersigned finds that the second and third reasons articulated by the ALJ necessitate further review of the larger issue by him, they will be addressed first.

### i. The stated daily living activities do not provide substantial evidence to reject the VA's disability determination.

It is well established in the Eleventh Circuit that "participation in everyday activities of short duration, such as housework or fishing, [does not disqualify] a claimant from disability." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  Daily activities are dispositive when they indicate that a claimant could handle the stress of a daily occupation. *See Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) ("It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.").  Duncan's ability to participate in limited and minimal activities of daily living is not adequate to discard the VA's disability determination without additional explanation.[6]  However, this evidence should be reconsidered when the ALJ assesses Dr. Saxon's evaluation and opinions. *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) ("the ALJ properly considered a variety of factors, including the claimant's use of pain-killers and his daily activities, in making the finding about pain"); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) ("the ALJ questioned Moore's contentions that she could not maintain

---

[6] The court is not impressed by the fact that Duncan attends church and monthly meetings of two model railroad clubs.  The skill set required to participate in such activities does not equate well to consideration of whether Duncan could adequately perform at work in view of his purported mental limitations.  The Commissioner also notes in her brief that "Plaintiff shops for groceries, reads, drives his granddaughter to school … watches TV, unloads the dishwasher, occasionally mows the lawn, wipes down the counters, … cares for his pets … [and] help[ed] care for his granddaughter."  (Doc. 14 at 10 (citing R. 77, 113, 258-62, 582)).  Again, the court is not convinced these additional activities equate well to the work situation in this instance.

consciousness or perform light work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework").

**ii.    The assessments of Drs. Markle and Griffith alone are not good cause to reject the VA's disability determination.**

Dr. Baren, a VA doctor, examined Duncan on May 13, 2010. (R. 520-44). After her physical examination, Dr. Baren concluded that Duncan suffered from "degenerative joint disease [of the] lumbar spine" and of the "cervical spine." (R. 543). Both diseases impacted Duncan's ability to perform chores. (*Id.*) Both situations were found to affect "[Duncan's] ability to perform physical but not sedentary employment." (*Id.*)

Dr. Markle examined Duncan on December 10, 2013. (R. 574-79). Like Dr. Baren, Dr. Markle focused on Duncan's physical impairments. (R. 575). Dr. Markle opined that "[t]here are inconsistencies based off medical review of records and the minor degenerative changes seen throughout his imaging over recent films and the severity of complaint appears to be out of the scope of the pathology seen on report." (R. 576). Dr. Markle diagnosed Duncan with "Lumbar degenerative disease with questionable S1 radiculopathy." (R. 578). Dr. Markle concluded his examination by opining:

> Maximum standing and walking: Up to four hours.
> Maximum sitting: Less than two hours given focal findings on examination. **Anybody with a herniated disc, sitting would be very difficult where it would increase his pressure on intradiscal pressure**.

Assistive devices: None needed or used.
Maximum lifting: Occasionally 10-20 pounds, and frequently 5-10 pounds.
Gross/fine manipulative activities: Reaching, handling, fingering or feeling no limitations.
Postural limits: steps, stairs, ladders, scaffolds, ropes, stoops, crouch, kneel or crawl frequently to occasionally. Postural limits may exacerbate radiculopathy.
Workplace environment: hearing, speaking, traveling or hazards no limitations.

(R. 579 (bold added)).

While Dr. Markle's opinion tends to support the ALJ's finding that Duncan was not disabled due to his back and hip pain, there is no discussion or analysis of the fact that Dr. Markle has a concern that Duncan would be limited in his ability to sit. Dr. Baren states that Duncan could only perform sedentary work while Dr. Markle indicates that sedentary work should be avoided because of Duncan's herniated disk. This discrepancy is complicated by the fact that one of Duncan's discs apparently ruptured in January 2014, requiring surgery in April 2014. (R. 76, 100). There is, however, no discussion or analysis of these events and their impact on Duncan's RFC. Accordingly, the undersigned finds that the circumstances require that the case be remanded for further consideration on this issue as well.

Concerning Duncan's mental health, Dr. McFarland performed a mental health exam on Duncan for the VA on March 23, 2010. (R. 365). Dr. McFarland noted that Duncan "[c]ontinues to report and exhibit chronically depressed mood, anhedonia, low energy, poor energy, poor concentration, poor sleep, irritability,

ruminations, crying spells, nightmares, and anxiety." (R. 367). Duncan's mood was described as "Hopeless, Depressed, Labile," though he was both attentive and properly oriented. (R. 368-69). Duncan's thought process was unremarkable and his impulse control was fair. (R. 369). Dr. McFarland noted that Duncan had "[s]ignificant problems with ADLS due to physical pain, anhedonia, and depression." (R. 370). Duncan's recent memory was described as "mildly impaired" even though he was found to be "capable of managing financial affairs." (*Id.*) Dr. McFarland concluded by opining:

> Medical records indicate that this veteran's service-connected general medical disabilities would make it extremely difficult for him to obtain and maintain any meaningful gainful employment requiring any level of physical exertion. Medical records, and this examination, indicate that it would be very unlikely that this veteran could obtain and maintain any meaningful gainful employment requiring any significant interaction with other people.
> Overall, it appears that the veteran's combination of [mild chronic pain] make it extremely unlikely that he will be able to obtain and maintain any meaningful employment unless or until he experiences a significant improvement in functioning.

(R. 371-72).

Dr. Griffith performed a mental health examination of Duncan in December 2013. (R. 581-84). Dr. Griffith noted that Duncan's "mood was 'normal' although he admitted to having no joy. Affect at times was flat and dysphoric." (R. 582). Dr. Griffith reported that Duncan was fully oriented and held mostly normal attention and concentration. (R. 583). Duncan's short term memory "appeared

intact." (R. 583). Duncan "appeared to be a fair to reasonable personal historian,"

and "gave marginally abstract responses to items of similarity." (R. 583).

Duncan's thought processes were described as "logical and goal oriented," though

his thought content appeared to contain "[p]assive suicidal thoughts." (R. 583).

From the medical records and personal examination, Dr. Griffith diagnosed

Duncan with "Major depressive disorder, moderate severity." (R. 583). In

explaining Duncan's prognosis, Dr. Griffith wrote:

> Mr. Duncan's prognosis appears guarded to poor. Mr. Duncan
> presented evidence of a major depressive disorder of moderate
> severity. However, he appears to have limited insight into the nature
> of his depression and likely has little motivation for treatment of his
> depression, although he might benefit from treatment of his
> depression over the next 3 to 6 months. As well, a complicating
> factor is Mr. Duncan's chronic pain.
>
> Mr. Duncan's ability to function independently appeared borderline to
> mildly limited. He has limited to no motivation for activities, likely
> partly due to depression as well as chronic pain. He has very few
> social or recreational interests. Although Mr. Duncan has experience
> in the past with management of finances, his wife is currently doing
> so. He might need short-term assistance with management of
> financial benefits.
>
> Despite his impairments, Mr. Duncan appears able to understand and
> carry out reasonably detailed instructions, although his depression and
> pain would likely result in some difficulties with concentration and
> memory. He has some guardedness but otherwise would not respond
> inappropriately to supervisors, coworkers, and the public. His ability
> to tolerate work stress appears moderately reduced.
> The impact of the claimant's physical symptoms on her/his cognitive
> and psychiatric symptoms was considered in this formulation.
> However, direct evaluation of the claimant's physical symptoms and
> chronic medical conditions is beyond this examiner's expertise.

(R. 583-84).

While the reports of Drs. McFarland and Griffith contain differences of opinion on some issues,[7] there are disturbing similarities.  Both doctors conclude that Duncan suffers from a major depressive disorder, which is exacerbated by his chronic pain, and that Duncan would have at least some concentration and memorization difficulties while employed.  Thus, the court finds that the analysis and reliance on either report, without consideration of Dr. Saxon's opinions, warrants a remand for additional review.  *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision.  In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.").

### iii.  VA treating records fail to corroborate the severity of Duncan's limitations prior to December 2013.

The ALJ found that the treating records from the VA fail to corroborate the alleged degree of severity prior to December 2013.  (R. 77).  In view of the court's determinations on the foregoing issues, it will be necessary to remand this case.

---

[7] Dr. McFarland expresses some concern with Duncan's memory while Dr. Griffith does not; Dr. Griffith expresses concern over Duncan's ability to manage his finances, while Dr. McFarland does not.

That will allow for further evaluation of the VA records along with the other, previously unconsidered evidence. Accordingly, the court pretermits any further discussion concerning whether the VA records support the severity of Duncan's limitations during the relevant period.

### C.     Complaints of Pain

Duncan alleges that the ALJ improperly discredited his testimony concerning the amount of his pain. (Doc. 10 at 10). Specifically, he asserts "the ALJ made no finding whatsoever as to whether [his] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id*. at 22). He then concludes "that the presence of 2 bulging discs and left-sided radiculopathy could reasonably be expected to cause the symptoms of pain as alleged." (*Id*.) The Commissioner responds that the ALJ properly considered Duncan's subjective complaints of pain and other symptoms. (Doc. 14 at 6 (citing R. 76-79)).

In evaluating a disability claim involving subjective complaints such as pain, United States District Judge L. Scott Coogler has stated:

> In order to establish a disability on the basis of subjective testimony of pain and other symptoms, the claimant must present evidence to support the Eleventh Circuit's pain standard. Under this standard, a plaintiff must present (1) evidence of an underlying medical condition; and (2) either a) objective medical evidence confirming the severity of the alleged symptoms or b) that the objectively determined medical condition is of such a severity that it can reasonably [be] expected to give rise to the alleged pain. *See* 20 C.F.R. § 404.1529(a)

> (2011); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1991) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1225 (11th Cir. 1991)).  If the claimant established an impairment that could reasonably be expected to cause his alleged symptoms, the ALJ is obligated to evaluate the claimant's subjective complaints, including intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work.  *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990).  The ALJ may discredit this type of pain testimony only by articulating "explicit and adequate reasoning" based on substantial evidence from the record.  *Foote*, 67 F.3d at 1561; *Wilson*, 284 F.3d at 1225.

*Parker ex rel. Parker v. Colvin*, 2013 WL 2635696, *3 (N.D. Ala. June 10, 2013).

A reversal is warranted if the decision of the ALJ contains no indication of proper application of the three-part standard.  *Holt*, 921 F.2d at 1223.  If the ALJ's reasoning is not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

In assessing credibility, the ALJ should consider the following factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) any precipitating and aggravating symptoms; (4) the medications taken to alleviate pain, and their side effects and effectiveness; (5) other treatment to relieve pain; (6) other measures to relieve pain; and (7) other factors concerning functional limitations and restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, *3.  These factors are to be evaluated in light of all the other evidence of record in making the necessary credibility choices.  20 C.F.R. § 404.1529(c)(4).

Duncan's primary complaint concerning pain is related to his back.  At his administrative hearing, Duncan testified that he experienced a bulging spinal disc in 1997.  (R. 76).  Over many years, he received medical treatment including pain management, physical therapy, injections, and recommendations that he exercise and lose weight.  (*Id.*)  Overall, his complaints were moderate and the treatment was modest.  (R. 355, 360-62, 535-43).  Physical examinations typically demonstrated that he had normal gait and posture with normal range of motion of the lumbar and cervical spine.  (R. 78, 345, 351, 357, 360-61, 526, 537, 541-43).  X-rays in May 2010 showed only mild to minor degenerative changes in the cervical and lumbrosacral spinal regions.  (R. 361-62, 542-43).  However, in December 2013, Duncan reported to Dr. Griffith that his "back pain never stops and that he usually will lay [sic] down in the bed to try not to hurt.  On a good day his back pain is a 3 or 4/10 but on a bad day his back will 'go out.'"[8]  (R. 581).  Shortly thereafter, in January 2014, one of Duncan's discs ruptured.  This resulted in Duncan having back surgery in April 2014.

Because the ALJ appears to have under-assessed Duncan's pain during December 2013 and because he did not discuss the impact of the medical records concerning Duncan's back from January through April 2014 (*see* R. 744-814, 826-

---

[8] The ALJ's decision simply recites that Duncan's "back pain was no greater than 3 or 4 on a 10-point scale."  (R. 78).  The ALJ also makes no mention of the fact that Dr. Griffith stated in the prognosis section of his report that Duncan's prognosis is "guarded to poor" and is complicated by the fact that he is in "chronic pain."  (R. 583).

41), the matter is due to be remanded for further consideration.  This is particularly necessary in view of the fact that the ALJ afforded significant weight to the opinion of Dr. Griffith, which includes the reference to significant pain during the relevant period.[9]

### D.  The ALJ's RFC Findings.

Duncan's counsel argues that the ALJ improperly determined Duncan's RFC.  In view of the court's findings above, it will be necessary to remand this case for further review and evaluation.  Depending upon the ALJ's determinations as to the foregoing matters, there will be a need to review Duncan's RFC determination.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is not supported by substantial evidence and this case should be remanded for further review and evaluation.

**DATED**, this 31st day of August, 2016.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[9] To the extent the Commissioner argues that the activities of daily living lend support to the ALJ's credibility and RFC findings as they relate to Duncan's physical limitations, the court notes this evidence is more probative on this issue than on the mental health issue discussed previously.  (*See* footnote 6 herein).